UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

Raleigh Sutherland,

    Plaintiff,

v.                                       CASE NO.

Publishers Clearing House, LLC,

    Defendant.

_____/

**CLASS ACTION COMPLAINT**
**(Jury Demand Endorsed Hereon)**

**INTRODUCTION**

1. Like most Americans, Raleigh Sutherland ("Raleigh") has a mobile residential telephone.

2. Being mobile, Raleigh takes his phone everywhere. Raleigh uses his phone to receive and make important calls, to get emergency information, and to call or send text messages to family members and friends. Raleigh uses his phone in his home and for his personal enjoyment.

3. But Raleigh's, and class members' homes, phones, and privacy have been invaded by spam calls from Publishers Clearing House, LLC ("PCH").

1

4. Raleigh, and class members, have no relationship with PCH, have no account with PCH, have never provided any phone number to PCH, and have never agreed for PCH to send any type of communication.

5. Raleigh, and some class members, have tried to eliminate the harassment and invasion of privacy from unauthorized calls by registering their phone numbers on the National Do Not Call Registry ("DNCR"), but even that did not work.

6. PCH simply blasts calls without caring if consent was obtained or if the recipient was on the DNCR.

7. "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ('TCPA'). But as every American knows, there are companies—like the defendant in this case—who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021).

8. Raleigh brings this action for himself and for other similarly situated people to enjoin these abusive practices and for damages.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C § 227.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this district.

11. This Court has supplemental jurisdiction over the FTSA claims under 28 U.S.C § 1367.

## PARTIES

12. Plaintiff Raleigh Sutherland is a resident of Hawthorne, Florida.

13. Defendant Publishers Clearing House, LLC is a New York corporation with its principal place of business in Jericho, New York.

## FACTUAL ALLEGATIONS

14. Raleigh's home, phone, and privacy been invaded by the non-emergency calls from PCH.

15. Raleigh is the residential subscriber of the cell phone number 585-750-1887. Raleigh uses this number for personal use. Raleigh uses this phone number at home. Raleigh makes and takes 100% of his personal calls on this phone number. Raleigh does not use this phone number in any business.

16. Raleigh registered 585-750-1887 on the DNCR to stop telephone solicitations on June 6, 2006.

17. PCH has knowingly and willfully called Raleigh multiple times, including at least four times from number 877-634-1170, for the purpose of soliciting Raleigh to purchase magazine and/or newspaper subscriptions.

18. Raleigh answered some of these calls and expressed his desire to not be contacted and asked to be placed on PCH's internal Do Not Call List.

19. Raleigh never provided 585-750-1887 to PCH, never had a relationship with PCH, and never gave permission for PCH to send any type of communication.

20. PCH initiated the calls for the purpose of encouraging the purchase of subscriptions to various periodicals.

21. PCH initiated the calls using an automated system. This is based on the following facts:

    i. the calls were generic and impersonal, suggesting they were sent to many people;

    ii. the calls were not in response to anything Raleigh did;

    iii. the calls continued after Raleigh asked for them to stop; and

    iv. after the calls were answered, there was a beep and then a pause before the caller started talking.

22. PCH stored or produced Raleigh's telephone number using a random or sequential generator. This is based on the following facts:

    i. Raleigh never provided his phone number to PCH;

      ii. Raleigh has no relationship with PCH, has no account with PCH, has never provided any phone number to PCH, and has never agreed for PCH to send any type of communication; and

      iii. the calls were not personalized.

23. On information and belief, PCH initiates and makes tens of thousands of similar calls to thousands of people.

24. The unwanted spam is incredibly annoying, distracting, and frustrating to Raleigh and the class members. Raleigh has tried to get the messages to stop but cannot. The spam invades their substantive right to privacy, namely the right to be free from unsolicited calls. The spam causes Raleigh and class members to avoid looking at their phones when it may be important or interrupting other activities to respond to unwanted calls. The spam reduces their phones' storage and battery life. In short, the spam invades their privacy, diminishes the value of their phones and their enjoyment of life, and causes a nuisance, an annoyance, and an intrusion into their seclusion.

25. By initiating calls to Raleigh, PCH has harmed Raleigh and the class members in the exact way Congress sought to protect in enacting the TCPA.

## LEGAL STANDARD

26. **Injury**. The Supreme Court recently recognized the nuisance that comes from telephone spam. "In enacting the TCPA, Congress found that banning

robocalls was 'the only effective means of protecting telephone consumers from this nuisance and privacy invasion.'" *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S.Ct. 2335, 2344 (U.S., 2020). "The TCPA is intended to prevent harm stemming from nuisance, invasions of privacy, and other such injuries." *Leyse v. Bank of Am. Nat'l Ass'n*, 856 F. App'x 408, 411 (3d Cir.). "When one sues under a statute alleging the very injury the statute is intended to prevent a concrete injury has been pleaded." *Id.* (cleaned up).

27. **Autodialed Calls**. The TCPA prohibits calls to cell phones using an automatic telephone dialing system ("ATDS") except for "emergency purposes" or with the "prior express consent" of the called party. 47 C.F.R. § 64.1200(a)(1). Calls that introduce an advertisement or constitute telemarketing require "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

28. **National Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the national DNCR. 47 C.F.R. § 64.1200(c)(2). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). Wireless telephone subscribers are allowed to place their number on the DNCR. 47 C.F.R. § 64.1200(e).

29. **Do Not Call Requests**. Before initiating calls, telemarketers must have a written policy relating to an internal do-not-call list and must honor do-not-call requests within a reasonable time not to exceed thirty days. 47 C.F.R. § 64.1200(d). "Telemarketers with the capability to honor such company-specific do-not-call requests in less than thirty days must do so." *Rules and Regulations Implementing the TCPA*, 68 Fed. Reg. 44144, 14069, ¶ 94. "This process [to honor do-not-call requests] is now largely automated. As a result, such requests can often be honored within a few days." *Id.*

30. **Applicability of Florida Law.** The Florida Telephone Solicitation statute applies to businesses that "conduct telephonic sales calls from a location in Florida." Florida Statutes § 501.059(1)(e).

31. **Autodialed call/texts.** Pursuant to Florida law, "[a] person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Florida Statues § 501.059(8).

32. **Florida Do Not Call Registry.** Any residential, mobile, or telephonic paging device subscriber can notify the Florida Department of Agriculture and Consumer Services of "his or her desire to be placed on a 'no sales solicitation calls' listing indicating that the subscriber does not wish to receive unsolicited

telephonic sales calls." Florida Statues § 501.059(3)(a). No person or business shall make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly listing published by the Florida Department of Agriculture and Consumer Services. Florida Statues § 501.059(4). The listing of the Florida Department of Agriculture and Consumer Services is to include the national database established by the Federal Trade Commission. Florida Statues § 501.059(3)(d).

33. **Florida Opt Out Requests**. Florida law prohibits telephone solicitors from calling anyone that has "previously communicated that they do not wish to receive a telephone call." Florida Statues § 501.059(5).

## CLASS ACTION ALLEGATIONS

34. Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Raleigh brings this action on behalf of himself, and the following Classes of persons similarly situated in order to remedy the ongoing unlawful practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

35. **Class Definitions**. Raleigh proposes the following Classes:

**The National DNCR Class**

All people in the United States (1) who are not customers of PCH,

8

(2) to whom PCH initiated more than one telephone solicitation within any twelve-month period, (3) to their residential cellular telephone number, (4) while their phone number was listed on the national Do Not Call Registry, (5) in the four years from the filing of this action through the date of class certification.

**The Do Not Call Class**

All persons in the United States (1) to whom PCH initiated more than one telemarketing call or text message within any twelve-month period, (2) to their residential cellular telephone number, (3) after receiving a do-not-call request, (4) in the four years from the filing of this action through the date of class certification.

**Florida Automated Calls Class**

All Florida residents with (1) telephone numbers having a Florida area code, (2) to whom PCH initiated calls, (3) using the same equipment or type of equipment utilized to call Plaintiff, (4) since July 1, 2021, through the date of class certification.

**Florida DNCR Class**

All people in the United States to whom (1) PCH made a call, (2) to their residential telephone number, (3) while the number was listed on

either or both the Florida or the national Do Not Call Registry,

(4) since July 1, 2021, through the date of certification.

**Florida Failure to Honor Opt Out Class**

All Florida residents with (1) telephone numbers having a Florida area code, (2) to whom PCH initiated the sending of a telephone solicitation text message to their cellular telephone, (3) after receiving a request to stop or language communicating the recipient's desire to not receive telemarketing text messages, (4) since July 1, 2021, through the date of class certification.

36. A member of a class may sue as a representative party if the member satisfies Federal Rule of Civil Procedure 23(a)'s four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

37. If Rule 23(a) is satisfied, a putative class representative must also show that the class falls into one of three categories under Rule 23(b). Fed. R. Civ. P. 23(b). For a Rule 23(b)(3) class, a plaintiff must make two further showings. First, a plaintiff must show that questions of law or fact common to class members predominate over any questions affecting only individual class members. *Id*. Second, a plaintiff must demonstrate class action is superior to other available methods for adjudicating the controversy.

38. **Numerosity**. A proposed class satisfies the numerosity requirement if class members are so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold. In general, courts find the numerosity requirement satisfied when a class includes at least forty members. Here, the Classes are so numerous that joinder of all members would be impracticable. The exact size of the Classes and the identity of the members are readily ascertainable from business records and likely number in at least the thousands.

39. **Commonality**. A proposed class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class. Fed. R. Civ. P. 23(a)(2). It is not a high standard. The claims must depend upon a common contention such that the determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. The word "question" in Rule 23(a)(2) is a misnomer: What matters to class certification is not the raising of common questions but, rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.

40. There are questions of law and fact common to the proposed Classes, including:

    i. Did they receive calls from PCH?

      ii. Were their numbers registered on the DNCR?

      iii. Did PCH timely honor opt-out requests?

      iv. Did PCH use an automated system for the selection or dialing of the telephone number?

      v. Were the calls for an emergency purpose?

41. **Typicality**. A proposed class representative's claims and defenses must also be typical of the class. Fed. R. Civ. P. 23(a)(3). The Supreme Court has recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose, or the relief sought. Representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical.

42. Raleigh 's claims herein are typical of those of the Classes that Raleigh seeks to represent. Raleigh 's and the class members' claims arise from the same conduct of PCH.

43. **Adequacy of Representation**. The final prerequisite under Rule 23(a) requires that the Court must be satisfied that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This overlaps in practice with the requirement under Rule 23(g) that class counsel must adequately represent the interests of the class. Fed. R. Civ. P. 23(g). The inquiry

under Rule 23(a)(4) asks two questions: (1) Does the representative plaintiff and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiff and their counsel prosecute the action vigorously on behalf of the class? Raleigh is an adequate representative of the Classes because his interests are common with the interests of the Classes, and Raleigh will fairly and adequately protect the interests of the Classes by pursuing this matter. Raleigh is represented by counsel competent and experienced in TCPA and class action litigation.

44. **Predominance of Common Questions**. A plaintiff may bring a class action under Rule 23(b)(3) only where questions of law or fact common to the class predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). If liability can be determined at a class-wide basis, common issues predominate.

45. **Superiority**. The final determination a court must make to certify a Rule 23(b)(3) class is that class action would be superior to individual actions in fairly and efficiently resolving the claims presented in this matter. Rule 23 enumerates four factors pertinent to determining whether class action is the superior method of litigation. First, the class members' interests in individually controlling the prosecution or defense of separate actions. Fed. R. Civ. P. 23(b)(3)(A). Second, the extent and nature of any litigation concerning the

controversy already begun by or against class members. Fed. R. Civ. P. 23(b)(3)(B). Third, the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)(C). Finally, the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(D). Where class wide litigation will reduce litigation costs and promote greater efficiency, a class action may be the superior method of litigation.

46. In the present suit, the questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, and deters illegal activities. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against PCH are small because the damages in an individual action for violations of the TCPA are small. Raleigh is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

47. Managing this case as a class action should have no significant difficulties. The law applicable to each putative class member is identical. The facts are too. Ultimately, the basic questions in this case are the same for all class members. The common answer to these questions will determine PCH's liability. Precedent demonstrates these questions can be litigated on a class wide basis.

## FIRST CAUSE OF ACTION
### Illegal Solicitation of Persons on the DNCR
### (On Behalf of the DNCR Class)

48. PCH violated 47 C.F.R. § 64.1200(c)(2) by initiating telephone solicitations to the residential cellular telephones of Raleigh and members of the National DNCR Class while their phone numbers were on the national DNCR.

49. Raleigh and members of the National DNCR Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

50. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

51. The court should enjoin PCH from initiating telephone solicitations to phone numbers on the DNCR. *Id.*

## SECOND CAUSE OF ACTION
### Failure to Timely Honor Opt-Out Requests
### (On Behalf of the Do Not Call Class)

52. PCH violated 47 C.F.R. § 64.1200(d)(3) by failing to timely honor the opt-out requests of Raleigh and members of the Do Not Call Class.

53. Raleigh and members of the Do Not Call Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

54. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

55. The court should enjoin PCH from initiating telephone solicitations to individuals who have made a do-not-call request. *Id.*

### THIRD CAUSE OF ACTION
### Illegal Use of an Automated System
### (On Behalf of the Florida Automated Calls Class)

56. PCH used an automated system for the selection and dialing of telephone numbers in making calls to Raleigh and the members of the Florida Automated Calls Class, without prior express written consent in violation of Florida Statutes § 501.059(8)(a).

57. As a result, Raleigh and members of the Florida Automated Calls Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation pursuant to Florida Statutes § 501.059(10)(a).

58. Because the violations were willful and knowing, the Court should award $1,500.00 in statutory damages, pursuant to Florida Statutes § 501.059(10)(b).

59. Raleigh and members of the Florida Automated Calls Class are also entitled to injunctive relief prohibiting PCH from using an automated system for the selection or dialing of telephone numbers when sending telemarketing text messages without the prior express written consent of the party to whose number is called.

## FOURTH CAUSE OF ACTION
### Violation of Florida Statutes § 501.059(4)
### (On Behalf of the Florida Do Not Call Class)

60.     PCH's telephone solicitation calls to Raleigh and members of the Florida Do Not Call Class, while their numbers were on the Florida or National Do Not Call Registry constitutes a violation of Florida Statutes § 501.059(4).

61.     As a result of the violation of Florida Statutes § 501.059(4), Raleigh and members of the Florida Do Not Call Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to Florida Statutes § 501.059(10)(a).

62.     Because the violations were knowing and willful, the court should award $1,500.00 in statutory damages for each violation, pursuant to Florida Statutes § 501.059(10)(b).

63.     Raleigh and members of the Florida Do Not Call Class are also entitled to and seek injunctive relief prohibiting PCH from initiating telephone solicitations calls to phone numbers on either the State of Florida Do Not Call Registry or the National Do Not Call Registry.

## FIFTH CAUSE OF ACTION
### Violation of Florida Statutes § 501.059(5)
### (On Behalf of the Florida Failure to Honor Opt Out Class)

64.     PCH's initiation of telemarketing calls to Raleigh and members of the Florida Failure to Honor Opt Out Class after Raleigh and the class members had

communicated their wish to not receive such text messages constitutes a violation of Florida Statutes § 501.059(5).

65. As a result of the violations of Florida Statutes § 501.059(5), Raleigh and members of the Florida Failure to Honor Opt Out Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to Florida Statutes § 501.059(10)(a).

66. Because the violations were willful and knowing, the Court should increase the award to $1,500.00 in statutory damages per violation, pursuant to Florida Statutes § 501.059(10)(b).

67. Raleigh and members of the Florida Failure to Honor Opt Out Class are also entitled to and seek injunctive relief prohibiting Defendant from making telemarketing calls or sending telemarketing text messages to any number that has communicated to PCH that they do not wish to receive telemarketing.

## RELIEF REQUESTED

Raleigh respectfully requests the Court grant the following relief against PCH:

    A. Certification of the proposed Classes;

    B. Appointment of Raleigh as class representative;

    C. Appointment of the undersigned as counsel for the Classes;

    D. An order enjoining PCH as set forth above;

E. An award of damages to Plaintiff and the Classes, as allowed by law;

F. An award of reasonable attorneys' fees and costs pursuant to Florida Statutes § 501.059(11); and

G. Orders granting such other relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the Complaint so triable.

Dated: October 26, 2022        Respectfully submitted,

/s/ *John Kauffman*
John Kauffman
Florida Bar No. 538205
LawHQ, P.C.
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090
john.kauffman@lawhq.com
*Attorney for Plaintiff*